## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **MATTHEW FOWLER,** by and through his parents, Ronald D. Fowler and Lillian J. Fowler, | ) ) ) | |
| Plaintiff, | ) ) | . |
| vs. | ) ) ) | No. |
| **BARRY S. MARAM,** in his official capacity as Director of the Illinois Department of Healthcare and Family Services, **CAROL L. ADAMS,** in her official capacity as Secretary of the Illinois Department of Human Services, **LILIA TENINTY,** in her official capacity as Director of the Office of Developmental Disabilities, | ) ) ) ) ) ) ) ) | **JURY DEMAND** |
| Defendants. | ) | |

### COMPLAINT FOR MONETARY DAMAGES
### AND DECLARATORY AND INJUNCTIVE RELIEF

Now comes the Plaintiff, by and through his attorney, Robert H. Farley, Jr., Ltd., and files the following complaint against the Defendants as follows:

### I.  INTRODUCTION

1. The Plaintiff, Matthew Fowler, a 22 year old developmentally disabled adult who exited special education in May, 2009 has been unable to obtain funding for community-based services from the Defendants. Due to Matthew's IQ of 61 and his daily seizure disorders, Matthew requires regular supervision throughout his daily living. Matthew has limited short term memory and he often needs help to remember where he is and he needs constant supervision to stay on task.

1

2. Due to the failure of the Defendants to provide funding for community-based services, Matthew is seeking monetary damages against the Defendants under the Rehabilitation Act as the result of the loss of life skills and the opportunity to develop to his fullest potential and the aggravation of his existing physical, mental and emotional conditions due to the lack of funding for services after exiting special education. The years and years of tremendous efforts and success by dedicated special education teachers and his parents is now being eroded by the failure of the Defendants to provide funding for community-based services after he has left special education.

3. The Defendants do not permit Matthew and similarly situated persons with developmental disabilities who are not "emergencies" to apply for funding for Medicaid community-based services. In January, 2008 the Defendants changed the practice of developmentally disabled persons seeking funding for community-based services under the Illinois Mediciad Home and Community-Based Services ("HCBS") waiver program by informing the Pre-Admission Screening / Individual Service Coordination (PAS/ISC) agency that non-emergency applications or requests for individual funding should not be sent to the Defendants. The new procedure mandated by the State of Illinois, requires a disabled person seeking funding to have their name enrolled on the Priority of Urgency of Needs for Services (PUNS) database. In other words, the Defendants' policy and practice of "don't call us, we will call you" to apply for services / funding is a violation of Matthew's rights under 42 U.S.C. Section 1396(a)(8) and 42 U.S.C. Section 1983 by failing to provide funding for community-based services with reasonable promptness. Provisions of services must not be delayed by the agencies' administrative procedures. 42 C.F.R. Section 435.930(a).

2

4. Matthew is at risk for institutional services, unless he is able to obtain funding from the State of Illinois for the community-based services under the Illinois Medicaid Home and Community-Based Services ("HCBS") waiver program. The HCBS program is authorized by federal law to permit developmentally disabled persons, such as Matthew, to receive home and community based services to avoid institutionalization. Matthew is seeking funding for the Home-Based Support Services Program (HBS) in order to avoid being institutionalized.

5. The Plaintiff qualifies for services under Defendants' system of long-term care for people with developmental disabilities, including Medicaid services. He brings this action against State Officials who administer Illinois' program for providing such services for people with developmental disabilities. The Plaintiff seek redress and damages for Defendants' practice of requiring him to reside in large, privately-run congregate care institutions - - known as "Intermediate Care Facilities for the Developmentally Disabled" (ICF/DDs) - - as a condition of receiving the long-term care services which he needs and for which he qualifies, in violation of Title II of the Americans with Disabilities Act, 42 U.S.C. Section 12132 (Title II); Section 504 of the Rehabilitation Act, 29 U.S.C. Section 794(a) (Section 504); Title XIX of the Social Security Act; 42 U.S.C. Section 1396-1396v (Title XIX); and 42 U.S.C. Section 1983.

6. Under the Americans with Disabilities Act ("ADA"), disabled persons, such as the Plaintiff, are entitled to care in the most integrated setting appropriate to their needs. In *Olmstead v. L.C. ex rel. Zimring,* 527 U.S. 581, 609 (1999), the United States Supreme Court held that a State is obliged to provide community-based treatment for individuals with disabilities, so long as the State's treatment professionals find that such treatment is appropriate, the affected individuals do not oppose community-based treatment, and placement in the

3

community can be reasonably accommodated, taking into account the State's resources and the needs of others with similar disabilities.

7. The Plaintiff prefers to live in a home that is integrated in the community, rather than an institution. Integration into the community benefits people of all levels of developmental disabilities and has been shown to achieve the most progress in the community.

8. Despite the demonstrated advantages of community-based programs, the Defendants administer an antiquated system for serving people with developmental disabilities that relies heavily on large public and private institutions, including ICF/DDs. This system defies the national trend of serving people with developmental disabilities in the community. Illinois ranks 51st among States and the District of Columbia in its placement of people with developmental disabilities in small community housing. Illinois ranks 47th in community disability services funding. While paying lip-services to the value of community-based programs, Defendants have been deliberately indifferent to reduce the State of Illinois reliance on large institutions or to expand Illinois' community-based programs.

9. The Defendants' do not have a comprehensive, effectively working plan for serving people with developmental disabilities in the most integrated setting appropriate for their needs.

10. The Defendants' policy and practice is to only advise those people who seek community services that they must be in an "emergency" situation (which is not defined in any pertinent law or regulation), in order to obtain funding for community-based services. The Defendants' policy and practice is to channel persons with developmental disabilities into ICF/DDs if they are in a current need for services. The Defendants' policy and practice is to severely curtain access to funding for community-based services.

4

11. By requiring the Plaintiff to submit to institutionalization as a condition of receiving developmental disability services, the Defendants are seeking to cause the Plaintiff to experience unnecessary regression, deterioration, isolation and segregation.

12. The "integration mandates" of Title II and Section 504 (implemented by 28 C.F.R. Section 35.130(d) and 28 C.F.R. Section 41.51(d)) require that state government services, programs and activities by provided in the most integrated setting appropriate to the needs of the person with a disability. The Supreme Court affirmed these mandates in *Olmstead* finding that "unjustified institutional isolation of persons with disabilities is a form of discrimination." 527 U.S. at 600. The Defendants have denied this mandate by clinging to a segregated, outmoded, and for the Plaintiff, a harmful institutional system and by failing to develop a comprehensive, effectively working plan to offer developmentally disabled individuals services in the most integrated setting appropriate to their needs.

13. In addition, the Defendants' actions violate Title XIX's requirement that Defendants: (1) offer persons with developmental disabilities who are Medicaid-eligible a choice between institutional and community services, and inform them of "feasible alternatives" under the Home and Community Based Services Waiver, which funds some community services in Illinois, see 42 U.S.C. Section 1396n(c)(2)(C); and (2) ensure that community services are provided with "reasonable promptness," 42 U.S.C. Section 1396a(a)(8).

14. The State of Illinois can reasonably accommodate providing community-based funding for Home Based Support Services for the Plaintiff.

15. Due to the failure of the Plaintiff to secure community-based funding after exiting special education, the Plaintiff has suffered and will continue to suffer extensive damages, in that

5

the daily living skills which he learned as a result of receiving years of special education will become eroded. It is not uncommon for a developmentally disabled person to suffer regression when their is not a individual habilitation plan in place to address their daily needs.

16. Although the Association for Individual Development (AID) did provide to the Plaintiff a workshop program during the summer of 2009, this program only lasted approximately three weeks as the funding for this program was from the State of Illinois to AID pursuant to a grant and the grant was terminated on or about July 1, 2009 by the State of Illinois. This grant program is not part of the HCBS program.

## II. JURISDICTION & VENUE

17. This Court has jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. Sections 1331 and 1343. Plaintiff's claim for declaratory, injunctive relief and damages are authorized under 28 U.S.C. Sec. 2201-02 and 42 U.S.C. Sec. 1983. The Plaintiff seeks to enforce his rights under the Americans with Disabilities Act, 42 U.S.C. Section 12132, under Section 504 of the Rehabilitation Act, 29 U.S.C. Section 794(a); and under Title XIX of the Social Security Act, 42 U.S.C. Sections 1396, 1396a-1396v.

18. Venue is proper in the Northern District of Illinois under 28 U.S.C. Sec. 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims arose there.

## III. PARTIES

19. The Plaintiff, Matthew Fowler, a 22 year old developmentally disabled adult who exited special education in May, 2009. Due to Matthew's IQ of 61 and his daily seizure disorders, Matthew requires regular supervision throughout his daily living. Matthew has limited short term memory and he often needs help to remember where he is and he needs constant

6

supervision to stay on task. Matthew is at risk for institutional services, unless he is able to obtain funding from the State of Illinois for the community-based services under the Illinois Medicaid Home and Community-Based Services ("HCBS") waiver program. Matthew is seeking funding for the Home-Based Support Services Program (HBS) in order to avoid being institutionalized.

20. The Defendant, Barry S. Maram, is the Director of the Illinois Department of Healthcare and Family Services (HFS) and is being sued in his official capacity. The HFS is the designated Medical Assistance Single State Agency and is responsible for the oversight and the administration of the Medicaid program under Title XIX of the Social Security Act, which includes programs for persons with mental retardation or developmental disabilities.

21. The Defendant, Carol L. Adams, as Secretary of the Illinois Department of Human Services (DHS) is being sue in her official capacity.

(a) Pursuant to an interagency agreement with HFS, Defendant Adams office (DHS) is responsible for administering Illinois' State Medicaid Plan and the monitoring of Title XIX programs.

(b) HFS has delegated the day-to-day-administration of the waiver program to DHS via an interagency provider agreement which specifies the activities performed by each of the two agencies. Under the terms of this agreement, DHS is responsible for administering the waiver according to the rules, regulations and procedures established by the HFS. DHS acts as the fiscal agent of HFS. DHS has in turn contracted with community-based agencies throughout the State to provide services to individuals in the waiver.

(c) DHS is responsible for administering the State of Illinois' preadmission

7

screening process, through which the State determines an individual's eligibility for institutional

or community services. There are 18 such agencies in the State, staffed by qualified mental

retardation professionals.

22. The Defendant, Lilia Teninty, is the Director of the Office of Developmental

Disabilities (ODD) which is operated within DHS and she is being sue in her official capacity.

The Office of Developmental Disabilities (ODD) is responsible for the control and

administration of the developmental disabilities program and its related Medicaid program in

Illinois.

## IV. STATEMENT OF FACTS

### A. Plaintiff Matthew Fowler

23. The Plaintiff, Matthew Fowler, a 22 year old developmentally disabled adult who

exited special education in May, 2009. Due to Matthew's IQ of 61 and his daily seizure

disorders, Matthew requires regular supervision throughout his daily living. Matthew has limited

short term memory and he often needs help to remember where he is and he needs constant

supervision to stay on task. Matthew is at risk for institutional services, unless he is able to

obtain funding from the State of Illinois for the community-based services under the Illinois

Medicaid Home and Community-Based Services ("HCBS") waiver program. The HCBS

program is authorized by federal law to permit developmentally disabled persons, such as

Matthew, to receive home and community based services to avoid institutionalization. Matthew

is seeking funding for the Home-Based Support Services Program (HBS) in order to avoid being

institutionalized.

24. The Plaintiff is a recipient of Medical Assistance, commonly known as Medicaid.

25. The Plaintiff wants to be able to receive funding to allow him to reside in the community and avoid being institutionalized.

26. The Plaintiff does not want to live in an institution in order to receive developmental disability services. That developmental disability community-based services are the least restrictive and most integrated setting for the Plaintiff.

27. That the Defendants' have refused to provide community-based funding to the Plaintiff.

28. That the failure of the Defendants to provide for community-based funding for home-based support services to the Plaintiff may ultimately force him into an institutional setting or cause him to regress and lose the skills which he obtained when attending special education.

**B.    The Integration Mandates of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act**

29. In 1990, Congress enacted the Americans with Disabilities Act, 42 U.S.C. Sections 12101 - 12181, to advance the civil rights of people with disabilities.

30. The ADA's purpose and goal is "the elimination of discrimination against individuals with disabilities." 42 U.S.C. Section 12101(b)(1).

31. In enacting the ADA, Congress stated that "historically, society has tended to isolate and segregate individuals with disabilities" and that such forms of discrimination "continue to be a serious and pervasive social problem." 42 U.S.C. Section 12101(a)(2).

32. Congress further determined that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic sufficiency for such individuals." 42 U.S.C. Section 12101(a)(8).

33. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. Section 12132.

34. Discrimination under Title II of the ADA includes unnecessary segregation and institutionalization. As the Supreme Court stated in *Olmstead v. L.C.,* 527 U.S. 581 (1999), "unjustified institutional isolation of persons with disabilities is a form of discrimination: because "[i]n order to receive needed medical services, persons with mental disabilities must, because of those disabilities, relinquish participation in community life. . ." *Id.* at 600-01.

35. The regulations to the ADA codify the prohibition against unnecessary segregation and institutionalization. 28 C.F.R. Section 35.130(d) ("A public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities"). Section 504 has an identical mandate. 28 C.F.R. Section 41.51(d) ("Recipients shall administer programs and activities in the most integrated setting appropriate to the needs of qualified handicapped persons").

36. Furthermore, the ADA prohibits public entities from utilizing "criteria or methods of administration" that have the effect of subjecting qualified individuals with disabilities to discrimination, which includes unnecessary institutionalization. 28 C.F.R. Section 35.130(b)(3). Section 504 has an identical mandate. 45 C.F.R. Section 84.4(b)(4); 28 C.F.R. Section 41.51(b)(3).

### C. The Federal/State Medical Assistance Program

37. Medical Assistance, commonly known as Medicaid, is a joint federal-state program

10

in which the federal government reimburses a portion of the expenditures incurred by States to

furnish health care services to people whose income and resources are insufficient to cover the

costs of care.

38. Title XIX of the Social Security Act of 1965, 42 U.S.C. Section 1396 *et. seq.* (The

"Medicaid Act"), establishes Medicaid, a federal program administered by the States to provide

health care to low-income individuals. State participation in the Medicaid program is optional.

If the State elects to participate, it must submit a "State Plan" for approval by the Secretary of the

United States Department of Health and Human Services ("HHS").

39. The federal government reimburses a participating State for a portion of the cost of

medical services provided under its Medicaid program. To receive federal funds, the State's

program must comply with the requirements set forth in the Medicaid Act and in federal

implementing regulations.

40. The Medicaid Act requires participating States to provide certain services to

individuals who qualify as "categorically needy" based on their eligibility for assistance under

other federal programs. 42 U.S.C. Sections 1396a(a)(10)(A), 1396d(a); 42 C.F.R. Section 435.4.

The Act offers States the option of providing -- and receiving federal Medicaid reimbursement

for -- additional health care services for the categorically needy and for the "medically needy,"

whose income and assets are limited but are too high to qualify for "categorically needy" status.

42 U.S.C. Sections 1396a(a)(10)(C); 42 C.F.R. Section 435.4.

41. One optional service that a participating State may provide is care for eligible

individuals in an "intermediate care facility for the mentally retarded ("ICF/MR"). 42 U.S.C.

Sections 1396d(a)(15), (d). Once a state commits to provide optional services, it must provide

11

them in compliance with the requirements of the Medicaid Act.

42. (a) The State of Illinois participates in the Medicaid program and has filed a State Plan with the federal government. In the State Plan, the State of Illinois has committed to provide Medicaid services to both the categorically needy and the medically needy.

(b) The State of Illinois Medicaid program includes ICF/MR or ICF/DD ("intermediate care facility for the developmentally disabled") services for eligible individuals. ICF/DD's provide residential, health, rehabilitative services and an active treatment program for individuals with developmental disabilities and mental retardation. The active treatment program includes habilitation, occupational therapy, speech therapy and physical therapy which is directed toward the acquisition of the behaviors for the person to function with as much self determination and independence as possible and the prevention or deceleration of regression or loss of current optimal functional status. 42 U.S.C. Sec. 1396d(d); 42 C.F.R. Sec. 483.45; 42 C.F.R. Sec. 483.400(a)(1)(i)-(ii).

### D. State of Illinois - Medicaid Waiver Plan for Adults with Developmental Disabilities

43. Alternatively, the State may provide — and receive federal reimbursement for -- Home and Community Based Services for the mentally retarded if the state obtains a "waiver" from the Secretary of HHS that permits the state to provide such services in place of ICF/MR care. *Id.* at Section 1396n(c)(1). Once a state commits to provide optional services, it must provide them in compliance with the requirements of the Medicaid Act.

44. (a) The State of Illinois was granted approval by the Secretary of HHS to operate "Home and Community Based-Services (HCBS) for Adults with Developmental Disabilities

12

under Section 1915(c) of the Social Security Act to operate a medicaid waiver program to provide services to individuals with mental retardation or developmental disabilities who would otherwise require an ICF/MR level of care. The use of the terms ICF/MR or ICF/DD are interchangeable.

(b) The State of Illinois HCBS waiver program is to provide services to individuals who, but for the provision of such services, would require the level of care in an intermediate care facility for mentally retarded or persons with related conditions (ICF/MR).

(c) Pursuant to its waiver program, the State of Illinois was granted a waiver of section 1902(a)(10)(B) of the Act to target waiver services to the select group of "mentally retarded and developmentally disabled" individuals who would be otherwise eligible for waiver services.

(d) Pursuant to its waiver program, the State of Illinois was granted a waiver of section 1902(a)(10)(B) of the Act to impose the additional targeting restriction of limiting waiver services to persons aged eighteen and older.

(e) Pursuant to its waiver program, the State of Illinois will not refuse to offer home and community-based services to any person for whom it can be reasonably be expected that the cost of home and community-based services furnished to that individual would exceed the cost of a level of care in an intermediate care facility for mentally retarded or persons with related conditions (ICF/MR)

(f) Pursuant to its waiver program, the State did not request a waiver of the "statewideness" requirements set forth in section 1902(a)(1) of the Act.

(g) Pursuant to its waiver program, the State obtained a waiver of the amount,

13

duration and scope of services requirement contained in section 1902(a)(10)(B) of the Act in order that services not otherwise available under the Illinois Medicaid State plan may be provided to individuals served on the waiver to the target group of persons who are mentally retarded and developmentally disabled and who are aged eighteen and older.

(h) Pursuant to its waiver program, persons accepted into the State of Illinois (HCBS) waiver program are entitled to receive, among other funding for services, community-based services in their own home, their family home, or a community or other residential arrangement providing necessary care and services. These services offer far more freedom and community integration than do ICF/DDs.

.          (i) Pursuant to its waiver program, the State of Illinois guarantees to mentally retarded and developmentally disabled individuals who are determined to be eligible for "waiver"services shall be given the choice of either institutional or home and community-based services.

(j) Pursuant to its waiver program, the State of Illinois guarantees that absent the waiver program, persons served in the waiver would receive the appropriate type of Medicaid-funded institutional care that they require.

45. Waiver services are a cost effective alternative to the higher cost, less integrated institutional care in an ICF/MR or ICF/DD.

46. Individuals who are eligible for "waiver"services are also guaranteed a choice between those services and ICF/MR or ICF/DD care by the Medicaid Act itself, 42 U.S.C. Section 1396n(c)(2)(C), and by other federal statutes and regulations. Eligible individuals are entitled to choose home and community-based services that are more "integrated" than

14

institutional care.

47.  Although States must apply for a specific number of slots for their HCBS waiver programs, there is no limit on how many slots a state may apply for.  Historically, the federal government has liberally granted States requests for additional waiver slots.  The federal government has informed States that the lack of available waiver slots does not absolve a State from complying with the ADA's integration mandate.  See Letter from U.S. Department of Health and Human Services to State Medicaid Directors at pages 4-5 (January 10, 2001).

48.  The Plaintiff seeks to receive funding for home and community-based waiver services as opposed to funding for institutional services.

49.  As a participant in the federal Medicaid program and a recipient of federal funds, the State of Illinois is required to comply with the provisions of the Medicaid Act.

50.  (a)  Section 1396a(a)(8) of the Medicaid Act requires that a state Medicaid program provide that medical assistance "shall be furnished with *reasonable promptness* to all eligible individuals."  42 U.S.C. Section 1396a(a)(8) (emphasis added).

(b)  A corresponding regulation provides that the responsible state agency "must," among other things, "[f]urnish Medicaid promptly to recipients without any delay caused by the agency's administrative procedures," and "[c]ontinue to furnish Medicaid regularly to all eligible individuals until they are found to be ineligible."  42 C.F.R. Sec. 435.930(a)-(b) (1996).  Another regulation states that "[t]he agency must establish time standard for determining eligibility and inform the applicant of what they are."  42 C.F.R. Sec. 435.911(a) (1996).  These period are not to exceed "[n]inety days for applicants who apply for Medicaid on the basis of disability" or "[f]orty-five days for all other applicants."  *42 C.F.R. Sec. 435.911(a)(1)-)(2) (1996).  Moreover*,

the agency "must not use the time standards" as "a waiting period." 42 C.F.R. Sec. 435.911(e)(1) 1996.

51. Despite the Medicaid Act's clear command that eligible individuals receive funding for care and services with "reasonable promptness," the Defendants have failed to provide the funding for all the services which the Plaintiff is eligible to receive under the HCBS program.

**E. "PUNS" - Illinois Waiting List For Persons Seeking Funding.**

52. In January, 2008 the Defendants changed the practice of developmentally disabled persons seeking funding for community-based services under the Illinois Mediciad Home and Community-Based Services ("HCBS") waiver program by informing the Pre-Admission Screening / Individual Service Coordination (PAS/ISC) agency that non-emergency applications or requests for individual funding should not be sent to the Defendants. The new procedure mandated by the State of Illinois, requires a disabled person seeking funding to have their name enrolled on the Priority of Urgency of Needs for Services (PUNS) database. In other words, "don't call us, we will call you" to apply for services / funding. Only after the State pulls a person's name from the PUNS database, is the person allowed to submit an application to the State for funding for HBCS services. Accordingly, getting enrolled in the PUNS database is not an application for funding for services.

53. That the Defendants' policies and practices of denying the Plaintiff to apply for funding for community-based services unless he is an "emergency" violates the provisions of the Medicaid Act.

54. Each Defendant, acting in his official capacity, is responsible for the control, implementation and administration of the State of Illinois obligations to the mentally retarded

16

and the developmentally disabled.

## V.  CAUSES Of ACTION

### COUNT I

**VIOLATION OF TITLE XIX - MEDICAID ACT -  42 U.S.C. SECTION 1396a(a),
AND 42 U.S.C SECTION 1983**

55.  The Plaintiff repeats and incorporates by reference as though fully set forth here the facts contained in paragraphs 1 through 54 above.

56.  The State of Illinois participates in the Medicaid program and has chosen to provide both ICF/DD services and HCBS waivers for eligible persons under its Medicaid plan.

57.  The Plaintiff is eligible for Medicaid.

58.  The Plaintiff requires the level of care provided in an ICF/DD.  Title XIX requires that when the Plaintiff is determined to be likely to require the level of care provided in an ICF/DD, states must inform the person of feasible alternatives under the HCBS waiver and give them a choice of either ICF/DD or waiver services.  42 U.S.C. Section 1396n(c)(2)(C), 42 C.R.F. Section 441,302(d).

59.  The Defendants, while acting under color of law, do not permit the Plaintiff and similarly situated persons with developmental disabilities who are not "emergencies" to apply for funding for Medicaid community-based services.

60.  In January, 2008 the Defendants changed the practice of developmentally disabled persons seeking funding for community-based services under the Illinois Mediciad Home and Community-Based Services ("HCBS") waiver program by informing the Pre-Admission Screening / Individual Service Coordination (PAS/ISC) agency that non-emergency applications

or requests for individual funding should not be sent to the Defendants. The new procedure mandated by the State of Illinois, requires a disabled person seeking funding to have their name enrolled on the Priority of Urgency of Needs for Services (PUNS) database. In other words, "don't call us, we will call you" to apply for services / funding. Only after the State pulls a person's name from the PUNS database, is the person allowed to submit an application to the State for funding for HBCS services. Accordingly, getting enrolled in the PUNS database is not an application for funding for services.

61. The Defendants, while acting under color of law, have violated and are violating Plaintiffs rights under 42 U.S.C. Section 1396(a)(8) and 42 U.S.C. Section 1983 by failing to provide funding for community-based services with reasonable promptness. Provisions of services must not be delayed by the agencies' administrative procedures. 42 C.F.R. Section 435.930(a).

62. The Defendants' failure to provide funding for community-based services to the Plaintiff with "reasonable promptness" violates Plaintiff's rights conferred by the Medicaid Act, 42 U.S.C. Sec. 1396(a) and implementing regulations. Plaintiff bring this action pursuant to 42 U.S.C. Section 1983 to enforce his federal statutory and constitutional rights. The Plaintiff seeks declaratory and injunctive relief to redress Defendants violation of the Medicaid Act.

63. As a result of the acts and omissions of the Defendants, the Plaintiff will suffer and continue to suffer physical, mental and emotional deprivation, including but not limited to the lose of life skills, loss of opportunities to develop to his fullest potential, and aggravation of his existing physical, mental and emotional conditions. The Plaintiff will continue to suffer such deprivations in the future absent relief from this Court.

## COUNT II

### VIOLATION OF AMERICAN WITH DISABILITIES ACT (ADA)
### AND 42 U.S.C SECTION 1983

64. The Plaintiff repeats and incorporates by reference as though fully set forth here the facts contained in paragraphs 1 through 63 above.

65. The Plaintiff is a qualified individuals with disabilities within the meaning of Title II of the ADA, 42 U.S.C. Sec. 12131(2)..

66. Title II of the American with Disabilities Act (ADA) provides that no qualified person with a disability shall be subjected to discrimination by a public entity. 42 U.S.C. Sec. 42 U.S.C. Sec. 12132. A public entitle shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities. 28 C.F.R. Sec. 35.130(d). Policies and practices that have the effects of unjustifiably segregating persons with disabilities in institutions constitute prohibited discrimination under the ADA.

67. Regulations implementing Title II of the ADA provide that "a public entity may not, directly or through contractual or other arrangements, utilize criteria or other medthods of administration: (i) that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability; [or] (ii) that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the entity's program with respect to individuals with disabilities . . ." 28 C.F.R. Sec. 35.130(b)(3).

68. The Illinois Department of Healthcare and Family Services of which Defendant Maram is Director is a "public entity" within the meaning of Title II of the ADA. The Illinois Department of Human Services of which Defendant Adams is Secretary is a "public entity"

within the meaning of Title II of the ADA. The Office of Developmental Disabilities of which

Defendant Teninty is Director is a "public entity" within the meaning of Title II of the ADA.

69. The Plaintiff qualifies for community services, and the community services is the

most integrated setting appropriate to meet his needs. Nevertheless, the Defendants have denied

them access to funding for community services and requires that he be confined in a segregated

facility (ICF/DD) in order to receive placement and services.

70. By requiring the Plaintiff to be confined in the segregated institutional setting of an

ICF/DD as a condition of receiving services, rather than providing funding for services in an

integrated community setting, the Defendants' violate the ADA's integration mandate.

71. Defendants' criteria and methods of administering Illinois' long-term care system for

people with developmental disabilities subjects the Plaintiff to illegal discrimination because

they require the Plaintiff to become institutionalized in order to receive services in contrast to

receiving funding for community based services.

72. To provide the Plaintiff with funding for community based services would not

fundamentally alter the programs, services or activities of the Defendnats.

73. The Defendants do not have a comprehensive, effectively working plan for serving

people with developmental disabilities in the most integrated setting appropriate for their needs.

74. The Defendant's failure to provide to the Plaintiff funding for community-based

services in the most integrated setting for receipt of those services, violates the community

integration requirements of Title II of the Americans with Disabilities Act, 42 U.S.C. Sec. 12132

and its implementing regulation 28 C.F.R. Sec. 35.130.

75. The Defendants' failure to reasonably modify existing programs, services or activities

20

for the Plaintiff with developmental disabilities violates the ADA.

76. Providing institutional care to the Plaintiff in an ICF/DD would be more costly than providing community-based funding to the Plaintiff in the Home-Based Support Services Program (HBS) operated by the Defendants.

77. The Plaintiff seeks declaratory and injunctive relief to redress Defendants violation of the Americans with Disabilities Act.

78. As a result of the acts and omissions of the Defendants, the Plaintiff will suffer and continue to suffer physical, mental and emotional deprivation, including but not limited to the lose of life skills, loss of opportunities to develop to his fullest potential, and aggravation of his existing physical, mental and emotional conditions. The Plaintiff will continue to suffer such deprivations in the future absent relief from this Court.

## COUNT III

### VIOLATION OF REHABILITATION ACT AND 42 U.S.C SECTION 1983

79. The Plaintiff's repeat and incorporate by reference as though fully set forth here the facts contained in paragraphs 1 through 78 above.

80. The Plaintiff is a qualified individual with a disability under Section 504 of the Rehabilitation Act, 29 U.S.C. Sec. 794(a).

81. The Defendants, the Illinois Department of Healthcare and Family Services, the Illinois Department of Human Services and the Office of Developmental Disabilities receive federal financial assistance.

82. The Rehabilitation Act, 29 U.S.C. Sec. 794, prohibits public entities and recipients of federal financial assistance from discriminating against any individual by reason of disability.

21

The implementing regulations for the Rehabilitation Act requires that public and federally-funded entities provide programs and activities "in the most integrated setting appropriate to the needs of the qualified individual with a disability." 28 C.F.R. Section 41.51(d). Policies and practices that have the effects of unjustifiably segregating persons with disabilities in institutions constitute prohibited discrimination under the Rehabilitation Act.

83. The Plaintiff qualifies for community services, and the community is the most integrated setting appropriate to meet his needs. Nevertheless, the Defendants have denied the Plaintiff access to community services and will only provide services if the Plaintiff resides in a segregated institutional facility (ICF/DD).

84. By requiring the Plaintiff to be confined unnecessarily in segregated environments as a condition of receiving services, rather than providing services in integrated community settings, the Defendants violate Section 504's integration mandate.

85. The Defendants policy and practice is to provide to developmentally disabled person an entitlement to institutional services, but not community based services.

86. The Defendants have intentionally discriminated against the Plaintiff by establishing a system which requires him to become institutionalized (reside in an ICF/DD) in order to receive or access services now, while other persons are able to access to community based services without having to become institutionalized. For example, the Illinois Supportive Living Program serves as an alternative to nursing facility placement, providing an option for seniors 65 years of age or older and persons with physical disabilities between the ages of 22 and 64 years who require assistance with activities of daily living, but not the full medical model available through a nursing facility. This assisted living-style program helps to delay admissions to the

22

more restrictive nursing facility. The Illinois Supportive Living Program is not available to a person who has a primary or secondary diagnosis of developmental disability.

87. The Defendants have been "deliberately indifferent" to the need for community based services for the Plaintiff and similar situated persons with developmental disabilities. Despite the demonstrated advantages of community-based programs, Defendants administer an antiquated system for serving people with developmental disabilities that relies heavily on large public and private institutions, including ICF/DDs. This system defies the national trend of serving people with developmental disabilities in the community. Illinois ranks 51st among States and the District of Columbia in its placement of people with developmental disabilities in small community housing. Illinois ranks 47th in community disabiltiy services funding. While paying lip-services to the value of community-based programs, Defendants have been deliberately indifferent to reduce the State of Illinois reliance on large institutions or to expand Illinois' community-based programs.

88. The Defendants have been deliberately indifferent to the Plaintiff by failing to provide a reasonable modification or accommodation to the existing institutional funding for disability services in order for the Plaintiff to receiving funding for community based services.

89. The Defendants have been deliberately indifferent to provide the Plaintiff with developmental disabilities, funding for services in the community, by failing to reasonably modify the existing funding programs for persons with developmental disabilities in order to recapture additional federal matching dollars which would provide for an increase in community based funding for the State of Illinois without having to request additional funding from the State Legislature.

90. It would not fundamentally alter the Defendants' programs, services, or activities to provide the Plaintiff with funding for services in the community.

91. Providing institutional care to the Plaintiff in an ICF/DD would be more costly than providing community-based funding to the Plaintiff in the Home-Based Support Services Program (HBS) operated by the Defendants.

92. As a direct and proximate result of the Defendants' policies, practices and procedures, the Plaintiff has been denied community based services which has caused him to suffer a loss of skills, unnecessary regression, deterioration, and isolation and has caused emotional distress / mental anguish.

93. As a result of the acts and omissions of the Defendants, the Plaintiff will suffer and continue to suffer mental and emotional deprivation, including but not limited to the aggravation of existing mental and emotional conditions.

94. As a result of the acts and omissions of the Defendants, the Plaintiff will suffer and continue to suffer physical, mental and emotional deprivation, including but not limited to the lose of life skills, loss of opportunities to develop to his fullest potential, and aggravation of his existing physical, mental and emotional conditions. The Plaintiff will continue to suffer such deprivations in the future absent relief from this Court.

95. The Plaintiff seeks declaratory and injunctive relief and monetary damages to redress Defendants violation of the Rehabilitation Act.

## VI.   REQUEST FOR RELIEF

WHEREFORE, the Plaintiff respectfully request that this Court and/or Jury:

(a) Award monetary damages to the Plaintiff under the Rehabilitation Act..

(b) Issue a Declaratory Judgment in favor of the Plaintiff that the Defendants' acts or

omissions violate Title XIX of the Social Security Act, Title II of the Americans with Disabilities

Act and Section 504 of the Rehabilitation Act.

(c) Issue a Permanent Injunction:

> (i) requiring Defendants promptly to determine Plaintiffs' eligibility for
>
> community services;.

> (ii) prohibiting Defendants from arbitrarily denying eligibility to individuals
>
> who are cable of living in a community setting with appropriate supports
>
> and services.

(d) Award Plaintiff the costs of this action, including reasonable attorneys fees, pursuant

to 42 U.S.C. Section 12205; Section 504 of the Rehabilitation Act, and 42 U.S.C. Section 1988;

and

(e) Award such other relief as the Court deems just and appropriate.


Respectfully submitted,

*/s/ Robert H. Farley, Jr.*
Attorney for Plaintiff

Robert H. Farley, Jr.
Robert H. Farley, Jr., Ltd.
1155 S. Washington Street
Naperville, IL 60540
Phone: 630-369-0103